**AMERICAN SURETY CO. OF NEW YORK et al. v. SULLIVAN.**

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 273.

1. **Pleading ⊜129(2) — Undenied allegations as to regulations requiring consular visé of passport held to admit existence of such regulations.**

In damage action against consul, under Rev. St. § 1735 (Comp. St. § 3193), for breach of official duty. where allegations that under the laws and consular regulations it was defendant's duty to visé citizen's passport were not denied, it must be taken as true that there were such regulations; there being no statute requiring such visé.

2. **Ambassadors and consuls ⊜5—Consul's instructions from State Department held not to authorize refusal to visé passport of American ship captain.**

In ship captain's action, under Rev. St. § 1735 (Comp. St. § 3193), against consul for damages caused by latter's unwarranted refusal to visé passports, pursuant to regulations of Department of State promulgated under authority of Rev. St. § 202 (Comp. St. § 300), *held*, defendant's breach of duty was not excused by instructions from the State Department to render no service in unauthorized transfer of vessels to foreign registry, where captain's connection with ship had ended, and the visé was merely to enable him to return to United States.

3. **Ambassadors and consuls ⊜5—Consul is responsible for keeping within his actual powers.**

A consul, although not chargeable for the mistaken exercise of his actual powers, is responsible for keeping within them, and may not use his authority to excuse an action which it does not justify.

4. **Criminal law ⊜20—"Willful" act, as used in criminal statutes, defined.**

"Willful," as used in criminal statutes, means no more than that person charged with duty knows what he is doing, and does not mean that he must suppose that he was breaking the law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willful—Willfully.]

5. **Ambassadors and consuls ⊜5 — $350 a month and expenses for captain's loss of time proper, under evidence.**

In action by sea captain for loss of time through detention by refusal of consul to visé his passport, where evidence showed that wages of masters in the United States were from $200 to $500 a month, allowance of $350 a month and expenses *held* proper.

6. **Costs ⊜189 — Stenographer's services in taking and transcribing deposition taken by consent out of court proper.**

Expense of stenographer's services in taking and transcribing deposition taken by consent out of court *held* proper item of costs.

In Error to the District Court of the United States for the Southern District of New York.

Action by John H. Sullivan against the American Surety Company of New York and another. Judgment for plaintiff, and defendants bring error. Affirmed.

Emory R. Buckner, U. S. Atty., of New York City (Francis A. McGurk, Asst. U. S. Atty., of New York City, of counsel), for plaintiffs in error.

Winifred Sullivan, of New York City, for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. Sullivan sued Wilcox under R. S. § 1735 (Comp. St. § 3193), for willfully neglecting to perform a duty imposed upon him by law. The case was as follows:

Sullivan was a sea captain, and in November, 1916, engaged with one De la Roncière, an alien, as master of the schooner Fanny Hodgkins, for a voyage from the United States to Point à Pitre, Guadaloupe. The schooner left New York on May 1st and reached Point à Pitre on May 30th, where Sullivan delivered his papers to the vice consul.

Wilcox was American consul for the island, and on March 16th had received a wire from the State Department advising him that no vessel registered under the laws of the United States should be sold, leased or chartered to any person not a citizen, or transferred to foreign register, without the approval of the Shipping Board. The dispatch concluded with the direction: "Decline render any service in connection such transfers." On May 29th he received a second wire respecting persons coming to the United States, which contained the following direction: "If convinced applicant's journey for an improper or inimical purpose decline visé and report to department." Supposing that the Fanny Hodgkins had been or would be transferred in violation of law, Wilcox wished to detain Sullivan on the island, so that he might sail her; he being the only American skipper available. He therefore refused repeated requests of Wilcox for a visé until August 6, 1917. The action was for Sullivan's expenses on the island and for his loss of wages while there detained.

In fact, the schooner was owned by one Sergent, an American, who had bought her in 1916, just when did not appear. Being

unable to pay for her in full he gave some kind of security to De la Roncière, who had lent him what he needed of the purchase price. After her arrival at Guadaloupe, Sergent found it was impossible to sail her as he had hoped, and tried to get leave of the Shipping Board to transfer her to alien ownership. Eventually, on August 14, 1917, he did get such leave, and did so sell to De la Roncière. Wilcox, getting wind of her proposed disposition, assumed that the venture had been from the outset a cover for violating the law to which his attention had been called by the wire of March 16th.

[1] No statute directs a consul to visé passports, and his duty to do so must therefore depend upon instructions or regulations of the Department of State, which is charged with supervision over consuls under the President. R. S. § 202 (Comp. St. § 300). The complaint alleged that under the laws and consular regulations it was Wilcox's duty to visé the passport of a citizen, and, as this was not denied in the answers, it must be taken that there were such regulations. We start, therefore, with that assumption, and the case resolves itself into whether the instructions above mentioned constituted an excuse for disregarding the duty so established.

[2] Wilcox's first excuse is that a visé would have been a service rendered in connection with the supposed transfer. We shall take it that he honestly believed that Sergent and De la Roncière were concerned in an unlawful transfer of the schooner, either already made in New York, or contemplated after her arrival in Guadaloupe. If so, Sullivan may have been privy to a crime, or at least an innocent instrument in its commission, but Wilcox had not been directed to punish him. Indeed, he had no such purpose, but supposed it to be a part of his duty to see that there was an American skipper on hand to sail her, if she was not transferred.

It is impossible to read his instructions so broadly, and difficult to understand how he supposed that they covered the case. Sullivan's services, criminal or innocent, were at an end. He wanted to go home, and the transfer would take place equally, whether he did or not. Wilcox rendered no service in connection with it by allowing him to leave.

The only conceivable theory is that Sullivan's continued presence might make the transfer less imperative than if he were gone. Sergent might be less moved to sell, had he a skipper at hand. But Wilcox's instructions did not mean that; all they meant was that he should give no direct assistance to the transfer. His interpretation overzealously extended this to mean that he should actively discourage the transfer at the expense of Sullivan, who had nothing further to do with it That was not an error in the discharge of his duties, but an error in understanding what they were, and for that he is liable.

The second excuse is even more plainly untenable. Sullivan's journey home was not "inimical" to the United States, except in the sense that he would not be able to sail the schooner after he had left. The instructions clearly did not go so far, but only applied to persons whose presence in the United States might be dangerous in time of war. It is impossible to read them in any other sense.

[3, 4] The case is a hard one, but a public officer, while not chargeable for the mistaken exercise of his actual powers, is responsible for keeping within them. He may not use his authority to excuse action which it does not justify. Else no one would have any remedy for misprision, unless the officer intended to act unlawfully. That has never been the law in English-speaking countries. The word "willful," even in criminal statutes, means no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law. Grand Trunk R. Co. v. U. S., 229 F. 116, 143 C. C. A. 392 (C. C. A. 6); People v. Foster, 236 N. Y. 610, 142 N. E. 304; People v. Brooks, 1 Denio (N. Y.) 457, 43 Am. Dec. 704.

[5] The damages were sufficiently proved. Sullivan swore that the wages of masters at the time in the United States were from $200 to $500. The jury allowed him $350 a month and his expenses.

[6] The expense of the stenographer's services in taking and transcribing a deposition taken by consent out of court was properly allowed as an item of costs.

Judgment affirmed.