**UNITED STATES of America,
Plaintiff,**

v.

**Daniel Allen REED, Defendant.**

**No. 23877–1.**

United States District Court,
W. D. Missouri, W. D.

Feb. 5, 1973.

William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Ronald M. Sokol, Asst. Federal Public Defender, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER DIRECTING ACQUITTAL

JOHN W. OLIVER, District Judge.

This prosecution for an alleged violation of § 3150, Title 18, United States Code, has been submitted to the Court as the trier of the facts pursuant to a full

stipulation. The defendant must be acquitted for reasons we shall state.

The undisputed facts establish that the usual complications resulting from dual prosecution by the state and federal authorities of the same defendant resulted in this case. In July, 1971, the defendant was bound over for trial on State charges of grand theft in California. The California case was set for trial in August, 1971. The defendant, however, failed to appear.

Thereafter, the defendant was arrested in this district on March 10, 1972. Instead of returning him for trial by the State of California, he was indicted in this district for an alleged violation of the Firearms Act. He was released on bail pursuant to the Bail Reform Act of 1966. The defendant entered a plea of not guilty on March 30, 1972, and thereafter filed various pretrial motions, including a motion to suppress.

The stipulated facts do not indicate on what date the Court scheduled the hearing on the motion to suppress. At some time, however, it was set for June 23, 1972. Furthermore, there is no evidence as to whether or not the defendant was in fact notified that the motion to suppress was to be heard on that day. For purposes of this case we shall assume the defendant did in fact have notice.

The stipulation makes clear that "approximately two weeks prior to June 23, 1972," a half-sister of the defendant telephoned defendant's unpaid attorney and advised him that the defendant was in jail in Los Angeles and apparently requested that attorney to so advise "the United States District Court at Kansas City at the time of Reed's next appearance there." The defendant's attorney did not do so because apparently sometime "in the spring of 1972" the defendant indicated that he planned to change attorneys and that he intended to employ counsel "more versed in criminal matters." Although it is obvious that defendant did not employ new counsel, his attorney told the F.B.I. that he did nothing about the information he had received. Rather, he was waiting for the defendant's Los Angeles attorney to take the initiative and to advise this Court that it would be physically impossible for the defendant to make any appearance in this Court as long as he was in jail in California.

■ The stipulation shows that the defendant was indicted in the pending case five days after he had failed to appear at the hearing of the motion to suppress. That indictment alleges, as it must, that the defendant "*willfully* and unlawfully failed to appear as required." United States v. Tremont (1st Cir., 1971) 438 F.2d 1202, stated the obvious when it said that "a defendant who is granted bail or released on his personal recognizance pending trial and then fails to appear does not suffer the penalty of being convicted by default." The notion that the violation of the conditions of a personal recognizance bond, regardless of the reasons why a defendant may not have appeared or may not have been able to appear, constitutes conclusive evidence of violation of Section 3150 is untenable.

United States v. De Pugh (8th Cir., 1970) 434 F.2d 548, 553, makes clear that "the present bail jumping statute differs materially from the prior bail jumping statute, 18 U.S.C. § 3146, which was repealed by the Bail Reform Act of 1966." That controlling case emphasized on page 553, that "the present statute provides that one released from the custody who *willfully* fails to appear as required shall incur a forfeiture of the security given for his release and then goes on to say, '*and in addition* shall be subject to criminal penalties.'"

■ The confusing element of the old statute, which required forfeiture of bail as a condition precedent for prosecution, was eliminated by the new Act. The *De Pugh* case held "the [present] statute by its plain language does not require forfeiture of bail as a condition precedent to criminal prosecution as an essential element of the offense." Whether or not, therefore, the defendant may have subjected his bond to forfeiture by vio-

lation of one of its conditions is relevant only as one circumstance which may be said to support a finding of willfulness. Violation of the conditions of the bond, standing alone, is not sufficient evidence to support a conviction under § 3150.

The *De Pugh* case, on the essential element of willfulness, simply held that a defendant was not entitled under all the circumstances of that case to an instruction that his failure to appear "could not be willful unless he had actual notice." That case pointed out that under the circumstances there presented the trial court had properly submitted the element of willfulness to the jury, holding that "the court [properly] told the jury that the issue of whether defendant's acts were willful was a factual issue for the jury to determine *and that if this essential element of the offense is not established, the defendant should be acquitted*" (emphasis ours).

 It should be obvious that mere proof of non-appearance, standing alone, is not sufficient to establish that the defendant acted "willfully in failing to appear." Nor is a prima facie case made by the introduction of evidence that the defendant violated the condition of his bond. Proof of those facts establishes little more than the undisputed fact the defendant did not appear. Cf. United States v. Thompson-Hayward Chemical Co. (8th Cir., 1971) 446 F.2d 583. Indeed, the stipulated factual circumstances make it clear that had this been a jury case, the government would not be entitled to go to the jury because we find that there is not sufficient evidence to support a finding that the defendant "willfully" failed to appear. As an alternative finding, we find and conclude from the evidence adduced by the government that the government has not proved, beyond a reasonable doubt, that the defendant "willfully" failed to appear.

It is undisputed that the defendant did not appear for the reason he was being held against his will in state custody in California. Had the government deemed it important to continue to usurp California's State prosecution, it undoubtedly would have applied for a writ of habeas corpus to require the defendant's presence in this Court. But that was not done.