**Vincent L. TRICE, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–518.

District of Columbia Court of Appeals.

Argued June 4, 1985.
Decided April 27, 1987.

Deborah L. Sines, Washington, D.C., appointed by this court, for appellant.

Edward C. McGuire, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and John E. Stevens, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MACK, TERRY, and ROGERS, Associate Judges.

TERRY, Associate Judge:

Appellant was convicted of willfully failing to appear in court when required, a crime commonly known as bail jumping, in violation of the District of Columbia Bail Act, D.C.Code § 23–1327(a) (1981). On appeal he contends that the evidence on the element of willfulness was insufficient to support his conviction, and that the trial court's instructions to the jury were confusing and incomplete. We reject all his arguments and affirm the conviction.

I

The government presented no live testimony in its case in chief but simply introduced four exhibits, each a photocopy of an official court document.[1] Exhibit No. 1 was part of the case file in Criminal Case No. M–8783–83, which showed that appellant was charged with a misdemeanor on July 11, 1983. He was released that day on his own recognizance, to return to court for trial on August 1. The exhibit also indicated that appellant was advised of the penalties for failure to appear in court as directed.

Exhibit No. 2 was a docket entry showing that appellant failed to appear in court on August 1 in No. M–8783–83, and that a bench warrant was issued that day for his arrest. Exhibit No. 3 was a copy of the bench warrant. The return at the bottom showed that appellant was arrested on the warrant on September 8, 1983.

Exhibit No. 4 was a copy of the District of Columbia Pretrial Services Agency's conditional release form, which was issued on July 11, 1983, at appellant's arraignment. It listed appellant's address as 636 I Street, S.E., Apartment 33. The form instructed appellant to report in person to the Pretrial Services Agency once a week. Appellant's signature appeared next to a statement in bold print that said, "I understand the penalties which may be imposed on me for willful failure to appear or for violation of any condition of release and agree to comply with the conditions of my release and to appear as required."[2] Immediately above appellant's signature was a box stating that appellant was "NEXT DUE BACK" on August 1, 1983, in Courtroom 1 at 9:00 a.m. Finally, in another box below appellant's signature, beginning with the word "IMPORTANT," appeared a notice in block capitals instructing appellant "to notify immediately the D.C. Pretrial Services Agency, 500 Indiana Avenue, N.W., first floor, telephone number 727–2800, of any change of address, employment, or change in status of any release conditions."

Appellant did not deny that he failed to appear in court on August 1, 1983, but defended on the ground that his failure was not willful. He testified that he was not in court on August 1 because he was unaware that he was supposed to be in court that day. At that time, he said, he had another pending criminal case, No. F–3821–82, in which he had made "around nine or ten" appearances without missing any scheduled court dates. Appellant explained that he routinely received notices in the mail from the Pretrial Services Agency telling him when and where to appear in court. The notices were mailed to his aunt's home at 613½ Park Road, N.W., rather than his own home at 636 I Street, S.E., because the mailbox in his apartment building had been "vandalized."[3]

---

1. The parties stipulated to the authenticity of each of the documents.

2. The parties stipulated to the authenticity of appellant's signature.

3. Appellant's mother, with whom he lived at 636 I Street, S.E., corroborated his testimony that the mailbox had been broken into and damaged. Because of this, she testified, she had rented a post office box.

Appellant remembered going to court on July 11, 1983, the day he was arraigned, but all he could think about that day was "going home." He said that neither his attorney nor anyone from the Pretrial Services Agency called him or mailed him a notice regarding his next scheduled court appearance.

On cross-examination, appellant acknowledged that he had signed the Pretrial Services Agency conditional release form immediately below the box stating that he was "NEXT DUE BACK on 1 Aug. 83 in Courtroom 1 at 9 A.M." He also conceded that he had received a copy of the form, but he could not remember what had happened to it. Appellant admitted that he did not contact the Pretrial Services Agency until August 8, when he called to inform the Agency of his problem with receiving mail and to find out when he was to return to court. He did not know with whom he talked on August 8, but whoever it was did not know the date of his next scheduled court appearance. Finally, appellant said he "understood" that the document he signed on July 11 "was an order" for him to return to court.

Michael Gunn, a representative of the Pretrial Services Agency, testified that the Agency's records showed that between July 26, 1982, and June 7, 1983, the Agency sent notices about appellant's pending felony case, No. F–3821–82, to him at 613½ Park Road, N.W. The records also showed, however, that with respect to his pending misdemeanor case, No. M–8783–83, in which appellant was scheduled to appear in court on August 1, 1983, the Agency sent the notices to 6 (not 636) I Street, S.E. Two notices were mailed, one on July 15 and one on July 27. On cross-examination Mr. Gunn explained that the Agency relied upon each defendant to provide a correct mailing address and to notify the Agency of any changes of address. The Agency, he said, had no way to determine whether a defendant's purported address was correct.

Cora Williams, appellant's aunt, testified that she lived at 613½ Park Road, N.W. She said that appellant had lived with her at an unspecified time in the past, and that during that time he had received mail there. However, no mail addressed to appellant had come to her house for over two years.[4] She specifically stated that she had not received any mail for him after he moved away, and that no mail came for him in August 1983. When asked whether she had ever notified appellant of his court dates, she replied, "[W]hen he had court days, I notified him, when he got mail, but he ain't got no mail there."

The government recalled Mr. Gunn as a rebuttal witness. He testified that the Agency records showed only one telephone contact with appellant concerning case No. M–8783–83. That contact occurred on August 25, 1983, not August 8 as appellant had claimed. In addition, Mr. Gunn pointed out that appellant did not comply at all with one of the conditions of his release in No. M–8783–83, namely, that he report weekly, in person, to the Agency.

The court instructed the jury in part as follows:

The essential elements of the offense of bail jumping, each of which the Government must prove beyond a reasonable doubt, are:

1. That the defendant was released by a judicial officer in connection with a charge of a misdemeanor;

2. That on August 1st, 1983, the defendant was required to appear before a court or judicial officer in connection with the misdemeanor charge;

3. That the defendant willfully failed to appear as required. In this connection, you are advised that an act is done willfully if done knowingly, intentionally, and deliberately.

If you find beyond a reasonable doubt that the defendant had received notice of the date on which he was to appear before a court or judicial officer and that he failed to appear on that date, then you may infer that his failure to appear on

---

4. Since the trial took place in January 1984, this would mean that no mail for appellant had come to the Park Road address since at least January 1982.

that date was willful. You may not infer that he willfully failed to appear, however, if, after considering all of the evidence, you find that his failure to appear was not willful.

You are further instructed that even if the defendant did not receive actual notice of the date on which he was to appear before a court or judicial officer, you may, if you find beyond a reasonable doubt that reasonable efforts were made to notify the defendant and that the defendant, by his own actions, willfully frustrated the receipt of actual notice, find that the defendant willfully failed to appear.

In determining from all the circumstances in question whether the defendant's failure to appear was willful beyond a reasonable doubt, you may also consider whether, at the time of his release from custody, the defendant was advised by a judicial officer of the penalties for failure to appear. You are instructed, however, that the Government need not establish that the defendant was advised of the penalties for failure to appear and you may return a verdict of guilty as to the defendant, even though there is no proof that the defendant was advised of the penalties for failure to appear, if you are otherwise satisfied beyond a reasonable doubt from all the evidence that the defendant's failure to appear was willful.

Intent means that a person had the purpose to do a thing. It means that he failed to act or acted with the will or will not to do the thing. It means that he acted or failed to act consciously or voluntarily and not inadvertently or accidentally.

Some criminal offenses require only a general intent. Where this is so, and it is shown that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the doing of the act.

Intent is a state of mind. Intent ordinarily cannot be proved directly, because there is no way of fathoming and scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and act done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind. You may infer that a person ordinarily intends the natural and probable consequence of acts knowingly done or knowingly omitted. However, you should consider all the circumstances in evidence that you deem relevant in determining whether the Government has proved beyond a reasonable doubt that the defendant acted with the required intent.

On appeal, appellant argues that the evidence was insufficient to prove that he willfully failed to appear in court when required, and that the court's instructions to the jury were erroneous and confusing. He also maintains that the court's failure to give a specific intent instruction was reversible error.

II

The crime of bail jumping, under D.C. Code § 23–1327(a) (1981), has four elements. The trier of fact must find (1) that the defendant was released pending trial or sentencing, (2) that he was required to appear in court on a specified date or at a specified time, (3) that he failed to appear, and (4) that his failure was willful. *Raymond v. United States*, 396 A.2d 975, 976 (D.C.1979). In this case, as in most bail jumping cases, the government's proof of the first three elements was not contested. The critical issue before the jury was the issue of willfulness.

The government was obliged to prove that appellant, "having been released ... willfully fail[ed] to appear before any court or judicial officer as required...." D.C. Code § 23–1327(a). "Any failure to appear after notice of the appearance date [is] prima facie evidence that such failure to appear [was] willful." D.C.Code § 23–1327(b). The government introduced into evidence appellant's signed release form of July 11, 1983, which stated immediately above his signature that he was required to appear in Courtroom No. 1 at 9:00 a.m. on

August 1, just three weeks thereafter. The evidence also showed that appellant was advised of the penalties for failing to appear in court as directed, and that he failed to appear on August 1. Thus the government presented enough evidence to establish a *prima facie* case under the statute.

Appellant did not dispute his failure to appear, and he admitted in his testimony that he understood the release form to be an order directing him to return to court on August 1. Focusing his defense on the element of willfulness, he presented evidence designed to show that his failure to appear was not willful. This evidence did not negate the government's *prima facie* case, however, but simply created a factual issue for the jury to resolve.

■ Appellant testified that he had come to rely on mailed notices from the Pretrial Services Agency in another pending case, and through Mr. Gunn he sought to prove that in case No. M–8783–83 the Agency had mailed its notices to the wrong address. Appellant's own testimony showed, however, that he did not inform the Pretrial Services Agency of his problem with receiving mail even at the correct address until at least one week after his scheduled August 1 court appearance. The government's rebuttal evidence established not only that appellant in fact failed to contact the Agency until more than three weeks after August 1, but that he never complied at all with one of the other conditions of his pretrial release, which was to report in person to the Agency every week.

■ Appellant's testimony that he relied on his aunt to forward mail to him was contradicted by his aunt's testimony that she had not received any of appellant's mail for at least two years before trial. In any event, appellant's suggestion that his absence from court on August 1 was due to his failure to receive a secondary notification from the Pretrial Services Agency, as he had on several occasions in his other

pending case, was not a legally acceptable excuse for his failure to appear. *See Raymond v. United States, supra,* 396 A.2d at 978 (bail jumping conviction upheld when defendant had been given written notice of the requirement to appear on a date certain, "although he was not thereafter reminded of it by the Agency").

■ Although appellant testified that he lost his copy of the release form and was thus unaware of when he was due back in court, he did not dispute that he signed the form immediately below the "NEXT DUE BACK" box, which conspicuously stated the date of his required appearance. Even if he did lose the form, it does not follow that he lacked notice of the appearance date; on the contrary, his undisputed receipt of the form at his arraignment was sufficient to establish that he had adequate notice, which in turn was *prima facie* evidence that his failure to appear on August 1 was willful. D.C.Code § 23–1327(b) (1981). Moreover, as we said in *Raymond,* appellant "is not a newcomer to the criminal justice system and cannot now hide behind a shield of naivety and confusion." 396 A.2d at 978. It was appellant's responsibility to appear in court when instructed to do so. If he could not remember the date that was on the form, it was up to him to contact the Agency immediately. His failure to do so cannot excuse his violation of the statute.

■ In sum, we hold that the government established a *prima facie* case. Viewing the evidence in the light most favorable to the government, as we must,[5] we are fully satisfied that it was sufficient under *Raymond* to permit the case to go to the jury.

### III

Appellant also argues that the trial court's instructions confused the jury as to what the government had to prove on the issue of willfulness. He contends that will-

5. *E.g., McClain v. United States,* 460 A.2d 562, 567 (D.C.1983); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978); *Crawford v. United States,* 126 U.S.App.D.C. 156, 375 F.2d 332 (1967); *Curley v. United States,* 81 U.S.App.D.C. 389, 160 F.2d 229, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

fulness has never been adequately defined by this court, and that the case law does not make clear whether the bail jumping statute requires a showing of bad purpose or evil intent, as with crimes of moral turpitude. Appellant further maintains that a specific intent instruction was required because the purpose of the statute is "to punish intentional disregard or complete indifference to a notice to appear," but not a negligent failure to appear.

Appellant's arguments fly in the face of our decision in *Patton v. United States,* 326 A.2d 818 (D.C.1974). We held in *Patton* that a conviction under D.C.Code § 23–1327 for willful failure to appear requires a showing only of "what is commonly referred to as a general intent of the defendant to commit the act of omission," and that "lack of an evil state of mind does not exculpate a bail jumping defendant." *Id.* at 820. We also noted that section 23–1327(b), which provides that "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful," is "irreconcilable with the contention that specific intent or an 'evil mind' is required; rather, the requisite intent is inferable from the omission itself." *Id.; see also Bethea v. United States,* 365 A.2d 64, 87 (D.C.1976), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977) ("Only by inference can the existence of intent—or the differentiation between its forms, such as general or specific—be determined"); *State v. Cofone,* 164 Conn. 162, 164, 319 A.2d 381, 383 (1972) ("Intent may be, and usually is, inferred from conduct").

■ We held in *Patton* that a specific intent to violate the law is not an element of the offense of bail jumping. This is so because bail jumping is not a common law crime of moral turpitude (*malum in se*), but a statutory crime (*malum prohibitum*) which we characterized in *Patton* as "regulatory in nature...." 326 A.2d at 820. To establish willfulness in a bail jumping case, all that the government must prove is that the defendant's failure to appear in court when requested was know-ing, intentional, and deliberate, rather than inadvertent or accidental. This is consistent with long-established case law in the District of Columbia on the meaning of willfulness:

> It is only in very few criminal cases that "willful" means "done with a bad purpose." Generally, it means "no more than that the person charged with the duty knows what he is doing. It does not mean that, in addition, he must suppose that he is breaking the law."

*Townsend v. United States,* 68 App.D.C. 223, 229, 95 F.2d 352, 358, *cert. denied,* 303 U.S. 664, 58 S.Ct. 830, 82 L.Ed. 1121 (1938), quoting from *American Surety Co. v. Sullivan,* 7 F.2d 605, 606 (2d Cir.1925); *see United States v. Illinois Central R.R.,* 303 U.S. 239, 242, 58 S.Ct. 533, 534, 82 L.Ed. 773 (1938), quoted in *Patton, supra,* 326 A.2d at 820. The trial court in this case instructed the jury that the government had to prove beyond a reasonable doubt that appellant "willfully failed to appear as required," and that "an act is done willfully if done knowingly, intentionally, and deliberately."[6] Later in its charge the court told the jury that to have had the requisite intent, appellant must have "acted or failed to act consciously or voluntarily and not inadvertently or accidentally." These instructions sufficed to inform the jury on the element of willfulness.

■ We also reject appellant's contention that the instructions were so confusing as to shift the burden of proof to him. After first stating that "an act is done willfully if done knowingly, intentionally, and deliberately," the trial court specifically told the jurors that they "may infer" that appellant's failure to appear was willful, but only if they found "that [he] had received notice of the date on which he was to appear before a court or judicial officer and that he failed to appear on that date...." In its very next breath the court cautioned the jury, "You may not infer that he willfully failed to appear, however, if, after considering all of the evidence, you find that his failure to appear was not willful." The court's instructions

6. Criminal Jury Instructions for the District of Columbia, No. 3.06 (3d ed. 1978).

on willfulness must be reviewed "not ... in artificial isolation, but ... in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973) (citation omitted). Applying this standard, we are satisfied that the instructions, considered as a whole, made clear that the burden of proving beyond a reasonable doubt each element of the offense, including willfulness, remained at all times with the government.

The instructions here are not comparable to those which have led the Supreme Court in some cases to reverse convictions on the ground that they shifted to the defendant the burden of proving his or her state of mind. For example, in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), the jury was specifically instructed that if the prosecution established that a homicide was intentional and unlawful, malice aforethought was to be "conclusively" implied; the defendant then had to prove by a preponderance of the evidence that he acted in the heat of passion with adequate provocation in order to reduce the charge from murder to manslaughter. Thus there was no real dispute that the burden of proof shifted to the defendant. Similarly, *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), involved a conclusive presumption of intent, which effectively eliminated the element of intent from the offense of "knowingly converting" government property. In *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the Court held that a reasonable juror could interpret the instruction "the law presumes that a person intends the ordinary consequences of his voluntary acts" as a mandatory finding of fact. *Id.* at 515, 99 S.Ct. at 2454. The Court implied, however, that a permissive inference to that effect—as opposed to a presumption—would pass constitutional muster. The instant case involves a permissive inference, not a presumption. *See also County Court of Ulster County v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979); *Tucker v.*

*Francis,* 723 F.2d 1504, 1517 (11th Cir. 1984).[7]

Our dissenting colleague suggests that the statutory inference of willfulness vanished from the case when appellant put on his defense. We cannot agree. Accepting the dissent's definition of *prima facie* evidence as "evidence good and sufficient on its face until rebutted or contradicted," *post* at 186, we think it is for the trier of fact to decide whether the proof offered by the defense rebuts or contradicts the government's *prima facie* evidence. The mere presentation of a defense does not dispel the statutory inference or cause it to drop out of the case, as the dissent maintains, *post* at 189, for the jury is always free to accept or reject the defense evidence. If the jury accepts it, the defendant is acquitted; if the jury rejects it, the statutory inference remains in the case and provides a sufficient basis for a verdict of guilty. But it does not compel a verdict of guilty; "*prima facie* evidence is only evidence, and as such may be held by the jury insufficient to make out guilt." *Bailey v. Alabama,* 219 U.S. 219, 248, 31 S.Ct. 145, 154, 55 L.Ed. 191 (1911) (Holmes, J., dissenting) (citation omitted). The instructions in this case, we think, made that clear to the jury.

*Affirmed.*

MACK, Associate Judge, dissenting:

I agree with the majority that the critical issue before the jury in this "bail jumping" case was that of whether appellant "willfully" failed to appear for trial. I also agree that the government *initially* established a prima facie case within the meaning of D.C.Code § 23–1327(a) (1981), by introducing documentary evidence that appellant had notice of the trial date and did not appear. I disagree with the majority's implicit conclusion that the government could continue to rely upon the prima facie inference of the statute (*i.e.* notice plus "no show") once the defendant had met his burden of producing evidence to show that

7. The decision in *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), turned on congressional intent and the Court's interpretation of "knowingly" in 7 U.S.C. § 2024(b) (1982). The case did not present a constitutional issue.

his failure to show was accidental or inadvertent. I find the trial court's instructions to the jury, under these circumstances, to be so inherently contradictory and confusing as to rise to the level of constitutional infirmity. *See Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). I also have grave difficulty with the reasoning of *Patton v. United States,* 326 A.2d 818 (D.C.1974), when applied to the facts of this case: in my view this application has the effect of lessening the government's burden of proof in contravention of basic principles of criminal and constitutional law.

## I

Certainly the majority's recitation of the facts reveals that appellant, after the government introduced court records showing that he did not appear on August 1, 1983, for trial on misdemeanor charges, presented a plausible story as to why he did not willfully fail to do so. He acknowledged that on the day of arraignment for these charges he had signed the Pretrial Services Agency's conditional release form listing the August 1 date; his explanation of stressful preoccupation at the time as well as his growing reliance on the Pretrial Services Agency for notice was not incredible. He had been charged in an unrelated felony case in 1982 and had appeared nine times without incident for scheduled appearances in that case, relying on notices of appearance dates mailed to him by that agency and addressed to the Park Road residence of his aunt. An Agency representative corroborated appellant's testimony that the agency had routinely mailed these notices to appellant between July 1982 and June 1983 to the Park Road address.[1] Moreover, Agency records showed that the two notices of the August 1, 1983 appearance dates (on the misdemeanor charges) had been incorrectly addressed to "6 Eye St. S.E." rather than to "636 Eye St. S.E.," the correct address of appellant that had been typed on the release form

signed by appellant (and the address at which appellant was subsequently arrested pursuant to a bench warrant). The Agency representative also corroborated appellant's testimony that he had belatedly called the agency to inquire about the misdemeanor case, although there was a difference in the testimony as to the precise date of that call in August.

The majority can draw no factual comfort, therefore, from the assertion that it was appellant's responsibility to notify the agency of his correct address when it appears that the agency had that address. The fact that appellant did not attempt to flee from that address, and the fact that he did voluntarily call the agency about the date of appearance, are consistent with his assertion that he let the date slip by inadvertently. Moreover, I do not see the significance of the majority's comment that appellant was not a newcomer to the criminal justice system. Appellant was not attempting to advance "a legally accepted excuse" (*i.e.,* that the agency was required and neglected to send him a secondary notice) but rather only the fact (which ironically follows from the fact that he was no newcomer to the criminal justice system) that he had been lulled by past practices into relying upon such notice. Surely the majority is not suggesting that experienced criminals are not entitled to be confused.

In any event, I do not see the issue as being one of whether the evidence produced by the appellant was sufficient to negate a prima facie showing by the government but rather one of whether appellant has met his burden of producing evidence that his failure to appear was not willful so as to dissipate the statutory inference and thus retain on the government the burden of going forward to prove willfulness beyond a reasonable doubt. This latter issue follows from what appears to me to be the only reasonable construction of a statute (D.C.Code § 23–1327 (1981)) that reads in pertinent part:

---

1. It is not clear to me how appellant's testimony that he relied upon his aunt (of the N.W. address) to forward mail to him could be said to be seriously contradicted by the aunt's testimony that she had not received mail for him for at least two years before trial. Rather the aunt's testimony appears to have been contradicted by that of the agency representative.

(a) Whoever, having been released under this title prior to the commencement of his sentence, *willfully fails to appear* before any court or judicially officer as required, shall ... if [ ] released in connection with a charge of misdemeanor, be fined not more than the maximum provided for such misdemeanor and imprisoned for not less than ninety days and not more than one year....

(b) *Any failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful....* [Emphasis added.]

It is the government's gridlock interpretation of this statute that has led to the current confusion. Thus the government, ignoring the phrase "willfully fails to appear" in the first provision, argued in the trial court that the second provision compels a legal conclusion that "state of mind is not important" to this offense. The government raised objections to defense counsel's attempts to demonstrate, in various ways, that appellant's failure to appear was inadvertent, maintaining that if he had received notice of the August 1 trial date, he was not entitled to rely on Pretrial Services Agency notice and could raise no defense of mistake, inadvertence or good faith. The trial court initially questioned whether appellant's evidence was "legally allowable to rebut the [statutory] inference." It ultimately permitted the evidence to come in, but stated that "the fact of [appellant] being aware of his required appearance is not an element of the offense" and that the "use of the word 'willful' [in the statute] confuses the issue." It found that a specific intent instruction would be "highly inappropriate" and stated, "I clearly find that this is a general intent crime."

The government also argued that its burden to show willfulness did not change even after the court permitted the defendant to introduce evidence of inadvertence or mistake: that it was entitled to continue to rely entirely on the statutory inference that any failure to appear following notice is "prima facie evidence" of willfulness, and to have the jury so instructed. Consistent with this position, the government

made no effort, following the admission of appellant's evidence of inadvertence, to show that circumstances surrounding the offense demonstrated that appellant failed to appear with the purpose to disobey or disregard the law. Instead, it continued to rely solely on the documentary evidence presented in its case-in-chief.

Against this backdrop, the confusing nature of the trial court's instructions to the jury is not surprising. The court listed, as an essential element of the offense, the willful failure to appear. While it told the jurors that they could not infer that the defendant willfully failed to appear if, after consideration of all the evidence, they found that his failure to appear was not willful, it also instructed that if they found beyond a reasonable doubt that the defendant had received notice of the date on which he was to appear and that he failed to appear, they might infer that his failure was willful. While the court instructed that intent meant a purposeful act or failure to act (as opposed to an inadvertent or accidental act), it immediately followed that with the comment that "Some criminal offenses require only a general intent. Where this is so, and it is shown that a person has knowingly committed an act which the law makes a crime, intent may be inferred from the doing of the act." Finally the jurors were told that they might infer the defendant's intent from surrounding circumstances, and almost immediately thereafter, that they might infer that a person ordinarily intends the natural and probable consequence of acts knowingly done or knowingly omitted.

The court refused to grant defense counsel's proffered instruction that in order to convict the jurors must find that appellant was "aware" of his obligation to appear. It also refused to give a defense instruction that if the defendant produced "special circumstances that explained the failure to appear [as not being the willful intention of the defendant], the requirement that the defendant willfully failed to appear is not satisfied"—an instruction which, counsel argued, would apprise the jurors that if they believed the defendant's explanation,

the statutory inference should in effect drop out.

By these panacean efforts, the trial court sought to interpret for the jury the meaning of a statute about which even lawyers (and judges) are confused; the most probable result is that the jury knew it could infer, and could continue to infer throughout trial, appellant's guilt.

## II

I see the question before us as "whether the challenged jury instruction[s] had the effect of relieving the state of the burden of proof ... on the critical question of petitioner's state of mind." *Sandstrom v. Montana, supra,* 442 U.S. at 521, 99 S.Ct. at 2458. I question whether these instructions, taken together, effect Congress' intent in creating criminal sanctions for "willful" failure to appear.

The majority does not question that intent—mens rea—is an essential element of the District of Columbia failure to appear statute.[2] It forecloses appellant's argument that the trial court's instructions were confusing and inadequate by reference to our decision in *Patton v. United States, supra.* I do not agree that *Patton* disposes of appellant's contentions. I agree with appellant that willfulness within the meaning of the bail jumping statute has never been adequately defined.[3]

As appellant points out, "willful" is a word of many meanings; its construction is dependent on the context in which it is used. *United States v. Murdock,* 290 U.S. 389, 394–95, 54 S.Ct. 223, 225, 78 L.Ed. 381

(1933). Its meaning may be obscured, rather than ascertained, by the simple expedient of labeling an offense as a specific or general intent crime or a crime "regulatory in nature."

At the outset, therefore, I suggest that *Patton's* characterization of § 23–1327 as creating a crime "regulatory in nature" for which only a showing of general intent is required tells us very little. Just recently, in *Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985), the Supreme Court was faced with a statute that was also "regulatory in nature," governing food stamp fraud, 7 U.S.C. § 2024(b) (1982). The Court held that the government was obliged to prove that the defendant knew his possession of food stamps was unauthorized by statute and regulations and that the trial court's failure to give a specific intent instruction was therefore reversible error. 105 S.Ct. at 2092.

Moreover whatever the nomenclature one chooses to apply, the fact is that, without exception, the courts considering the former federal "failure to appear" statute, 18 U.S.C. § 3150 (repealed 1984), which also included "willfulness" as an essential element, *see Patton, supra,* 326 A.2d at 820 n. 4 (noting that the District of Columbia and former federal statutes "contain[ ] the same sort of willfulness language"), uniformly have held that the statute requires *proof* of the defendant's *purpose* to violate the law, and disallow conviction if the failure to appear was by mistake, acci-

**2.** The majority in fact states "To establish willfulness in a bail jumping case, all that the government must prove is that the defendant's failure to appear in court when required was knowing, intentional, and deliberate, rather than inadvertent or accidental." *See* majority opinion at 181.

**3.** We have never considered the statutory inference and implementing jury instructions in the context in which it is here raised. In *Robinson v. United States,* 322 A.2d 271, 273 (D.C.1974), we reviewed a broad constitutional challenge to the statute raised for the first time on appeal. After drawing an analogy to the presumption attendant to the possession of recently stolen property, we found no plain error. In *Raymond v. United States,* 396 A.2d 975 (D.C.1979),

we rejected a similar constitutional challenge to the statute and to an instruction that the jury "may infer" willfulness from notice and failure to appear, relying solely on *Robinson.* In *Raymond* we stressed that the burden of persuasion on the critical element of intent may never be shifted to the defendant, but we found no error in the instruction there given because it would permit the jury to totally ignore the inference. We did not have occasion in *Raymond* to consider appellant's argument here that the cumulative effect of the trial court's instructions was to read the essential element of the crime—willfulness—out of the statute, and to foreclose the possibility that the jury could ignore the inference.

dent, or in good faith. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *United States v. Wetzel*, 514 F.2d 175, 177 (8th Cir.), *cert. denied*, 423 U.S. 844, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975); *United States v. Cohen*, 450 F.2d 1019, 1021 n. 2, 1022 (5th Cir.1971); *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir.), *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969).

To the extent therefore that *Patton* can be read as holding that in every case arising under the District of Columbia statute, a showing of specific intent is not required, *Patton* deserves a closer look by the court sitting *en banc*.

This is best illustrated by reading the *Patton* opinion in the abstract and then in the context of this case. In *Patton*, the trial court had instructed that the word "willful" meant "that the [act] was done consciously and voluntarily and not inadvertently or accidentally ... [and] the act is done willfully if it is done knowingly, intentionally and deliberately." On appeal, this court rejected Patton's claim that the trial court had improperly refused to give a specific intent, rather than a general intent instruction. We affirmed, relying upon the fact that the Bail Reform Act created a regulatory offense, not in existence at common law, and thus required no evil purpose or criminal intent. We also noted that the failure to appear after notice inference was "irreconcilable with the contention that specific intent or an 'evil mind' is required; rather the requisite intent is inferable from the omission itself."

Significantly *Patton* does not tell us what happens when a defendant has introduced a rebuttal or explanation casting doubt on the validity of the statutory inference. We do not know, for example, whether Patton introduced any evidence at all; it is clear that defense counsel proffered no definitive position as to how he desired a specific instruction to be applied to the offense. *See Patton, supra*, 326 A.2d at 819 n. 2. We do know that the case upon which *Patton* relied as "support[ive]" was one in which the trial court denied a continuance when the defendant proffered that he would produce witnesses to show that his absence was caused by fear for his own person—a fact which, even if proved, would not amount to a defense under *Patton*. By contrast, appellant Trice has produced evidence that his failure to appear was neither intentional nor deliberate but rather inadvertent or accidental—a defense which would be valid under *Patton*. If the definition of "prima facie evidence" presupposes evidence good and sufficient on its face until rebutted or contradicted, we can see why the application of the reasoning of *Patton* to this case poses a problem.[4] If we read *Patton* therefore as holding that no matter how convincing or compelling a defendant's justification, the government may never be deprived of the benefit of the willfulness inference, we are in the posture of rendering the statute unconstitutional.

It hardly bears repeating that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). Under *Winship*, a legislative authority may legitimately create presumptions and affirmative defenses in certain cases that may shift the burden of production or persuasion to the defendant, *see Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *see also Martin v. Ohio*, ─── U.S. ───, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). The burden must remain on the government, however, to prove beyond a reasonable doubt two core elements of each offense: an "actus

---

4. BLACK'S LAW DICTIONARY at 1071 defines prima facie evidence as follows:

Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the given fact, or the group or chain of facts constitut-

ing the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Prima facie evidence is evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence.

reus" by the defendant,[5] and in all but strict liability offenses, some mens rea, or intent.

The litany used to describe a jury instruction as creating a "permissive" inference, informing the jury that it "may infer" intent from notice and failure to appear, does not eliminate altogether (as the government has suggested) the due process problem. We are not dealing here with a natural inference but a statutory one. The determination of the nature of a (statutory) "inference," no less than that of a presumption, requires more than a shallow characterization; "[t]hat determination [of the nature of a presumption] requires careful attention to the words actually spoken to the jury ... for whether a defendant has been accorded his constitutional rights *depends upon the way a reasonable juror could have interpreted the instruction." Sandstrom v. Montana, supra,* 442 U.S. at 514, 99 S.Ct. at 2454 (emphasis added). In *Sandstrom,* the jurors were told that the law presumes that a person intends the ordinary consequences of his voluntary acts. *Id.* at 515, 99 S.Ct. at 2454. Here, the jurors were told not only that they could infer that a person ordinarily intends the natural and probable consequence of acts knowingly done or omitted, but that they could infer intent from notice and failure to appear and from the doing of an act. Here as in *Sandstrom,* there was the "risk" that the jurors, having found appellant's act (of omission) to be voluntary, would interpret the instruction as directing a finding of intent; given the lack of clear qualifying instructions as to the legal effect of the inference (presumption) we cannot discount the possibility that the jury may have interpreted the instructions as effectively shifting the burden of persuasion on the element of intent. *Id.* at 515–19, 99 S.Ct. at 2454–57.[6] A presumption which, although not conclusive, has "the effect of shifting the burden of persuasion to the defendant" on the question of intent, relieves the prosecution of part of the *Winship* burden of proof on the critical question of state of mind, and represents constitutional error. *Sandstrom v. Montana, supra,* 442 U.S. at 524, 99 S.Ct. at 2459. *See also Mullaney v. Wilbur,* 421 U.S. 684, 702, 95 S.Ct. 1881, 1891, 44 L.Ed.2d 508 (1975) (burden of proof on intent—"a fact so critical to criminal culpability"—may not be shifted to the defendant, notwithstanding fact that "intent is typically considered a fact peculiarly within the knowledge of the defendant"); *Raymond v. United States, supra* at note 3, 396 A.2d at 977 (burden of persuasion as to intent, an essential element of the failure to appear offense, may not constitutionally be shifted to the defendant; "the government cannot require a defendant to prove his innocent state of mind").

My position is best explained by reference to the majority opinion in *Bailey v. Alabama,* 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191 (1911) from which our majority chooses a dissenting comment.[7] In *Bailey*

---

**5.** An "actus reus," or act, is an essential element of every crime, because "[b]ad thoughts alone cannot constitute a crime; there must be an act.... Thus the common law crimes are defined in terms of act or omission to act, and statutory crimes are unconstitutional unless so defined. A bodily movement, to qualify as an act forming the basis of criminal liability, must be voluntary." W.R. LaFave & A.W. Scott, Jr., Criminal Law § 25 (1972). *See also* R. Perkins & R. Boyce, Criminal Law 605 (1982) ("necessity of an act for the existence of any crime"); Model Penal Code § 1.13(2).

**6.** Despite its reliance on *Patton,* I read the majority here as recognizing these dangers and rejecting the position of the government that "state of mind is not important." Thus, in rejecting appellant's contention that the instructions did not shift the burden of proof, the

majority relies solely upon the trial court's one line instruction that "You may not infer that he willfully failed to appear, however, if after considering all of the evidence, you find that his failure to appear was not willful." I take issue, in turn, with the majority's implicit conclusion that the instructions read as a whole (with reference to inferences that may be drawn from notice and failure to appear, the doing of an act, and the natural and probable consequences flowing therefrom) did not employ the inference so as to adversely affect the jury's ability to dispassionately weigh the evidence.

**7.** Our majority quotes from the dissent in *Bailey* to define prima facie evidence ("*prima facie* evidence is only evidence, and as such may be held by the jury insufficient to make out guilt"). Majority opinion at 182. We note that the

the defendant's intent was an essential element of the offense defined by the state, and there, as here, the state had defined an initial fact (breach of contract) as "prima facie evidence" of intent to defraud. An argument was made to the Court that the statutory inference was sound because it could be interpreted as not requiring the jury to infer fraud from breach of contract, but rather simply as permitting such an inference, and was therefore valid. The Court said:

> It is not sufficient to declare that the statute does not make it the *duty* of the jury to convict, where there is no other evidence but the breach of the contract and the failure to pay the debt. The point is that, in such a case, the statute *authorizes* the jury to convict. It is not enough to say that the jury may not accept that evidence as alone sufficient; for the jury may accept it, and they have the express warrant of the statute to accept it as a basis for their verdict.... [T]he jury were told in effect that the evidence, under the statutory rule, was sufficient, and hence they treated it as such. *The normal assumption is that the jury will follow the statute and, acting in accordance with the authority it confers, will accept as sufficient what the statute expressly so describes.* [Emphasis added.]

219 U.S. at 235–37, 31 S.Ct. at 149–50. *See also* Ashford & Risinger, *Presumptions, Assumptions, & Due Process in Criminal Cases: A Theoretical Overview*, 79 YALE L.J. 165, 199 (1969). Similarly the danger of burden-shifting, when employing a permissive presumption, may be explained by paraphrasing the language of *Morissette v. United States*, 342 U.S. 246, 275, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952): once a defendant has met his burden of production to show exculpatory facts, even the permissive inference instruction given the jury— that it "may infer" willfulness from notice

—"permit[ted] the jury to make an assumption which all the evidence considered together [did] not logically establish ... [and] conflict[ed] with the overriding presumption of innocence."

Although there might be cases in which the evidence supporting the inference is so persuasive that any additional prompting of the jury procured by the instruction could be regarded as harmless, that is not the situation here. For this is not a case in which the defendant had left the jurisdiction, *see United States v. Dorman*, 496 F.2d 438, 440 (4th Cir.), *cert. denied*, 419 U.S. 945, 95 S.Ct. 214, 42 L.Ed.2d 168 (1974); or had gone underground, *see United States v. DePugh*, 434 F.2d 548, 554 (8th Cir.1970), *cert. denied*, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971); or was apprehended using an alias, *see Gant v. United States*, 506 F.2d 518, 519 (8th Cir. 1974), *cert. denied*, 420 U.S. 1005, 95 S.Ct. 1449, 43 L.Ed.2d 764 (1975); or had failed to keep the court informed of his forwarding address, *see United States v. Wetzel*, *supra*, 514 F.2d at 177. The government presented no evidence of willfulness other than the statutory minimum: the fact that appellant had signed a form that included his appearance date. Appellant testified that he lost that form, and relied on the Pretrial Services agency to keep him informed, as it had done nine times previously, of his trial date. He failed to appear when he did not receive the customary notice from the agency, which had twice been sent to an erroneous address. Appellant made no attempt to flee, but was arrested in his home. Under these circumstances, where the government's case was negligible, consisting of the bare facts giving rise to the statutory inference, but the defense case as relatively strong, the lifting of the government's burden of proof that is achieved by the instructions taken as a whole cannot be regarded as harmless.

---

*Bailey* majority defines prima facie evidence in quite different terms.

> Prima facie evidence is sufficient evidence to outweigh the presumption of innocence and *if not met by opposing evidence* to support a verdict of guilty. "It is such as, in judgment

of law, is sufficient to establish the fact; and *if not rebutted*, remains sufficient for the purpose."

*Bailey v. Alabama, supra*, 219 U.S. at 234, 31 S.Ct. at 149 (citation omitted; emphasis added).

The significant fact in the instant case is that the jury did convict, although there is an absence of what the majority defines as evidence to establish intent, and despite the fact that intent is an essential element of the offense of bailjumping. The only logical explanation is that the jury, told that the evidence under the statutory inference was sufficient to convict, thus treated it as conclusive. If it found Trice guilty because it disbelieved Trice then it has engaged in what it could not do, *i.e.*, placed the burden on the defendant of showing that he did not have the intent required for conviction under the statute.

The question remains as to the proper role on these facts of the proof of notice, which the statute deems to be prima facie evidence of intent. I view the definition of a prima facie case created by the statute as a restriction on the trial court's discretion: since notice and failure to appear are deemed sufficient, by virtue of the inference, to create a prima facie case, the court may not direct a verdict of acquittal at the close of the government's case once notice and failure to appear are demonstrated. The statutory definition of a prima facie case may thus be seen as a legislative circumvention of a series of federal decisions interpreting the former federal failure to appear statute, 18 U.S.C. § 3150 (repealed 1984).[8] Several courts had held that notice and failure to appear alone were insufficient to sustain an inference of willfulness under that statute, and that lower courts had erred in refusing to direct a

verdict of acquittal where the government had proved only these facts. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *United States v. James*, 440 F.Supp. 1137, 1139 (D.Md.1977); *United States v. Reed*, 354 F.Supp. 18, 19–20 (W.D. Mo.1973); *see also United States v. Moss*, 141 U.S.App.D.C. 306, 310, 438 F.2d 147, 151 (1970). The statutory inference created by Congress thus insures that a government case consisting only of notice and failure to appear will get to the jury. Once the case has survived a motion for judgment of acquittal, and the defendant has gone forward with his burden of production to show lack of willfulness, it serves no useful purpose to instruct the jury that it may infer willfulness from the government's case alone; indeed, as outlined above, such an instruction can only have the effect of lessening the government's burden of proof—a burden that should remain on the government throughout the trial, under *Winship*—and prejudicing the defense. I would therefore hold that once the opponent of the statutory inference, appellant, went forward with his burden of production—introducing evidence that would have justified a jury finding in his favor—the inference should have dropped out of the case, and the issue of intent should then have been submitted to the jury without any reference to the inference. *See* J. THAYER, A PRELIMINARY TREATISE ON EVIDENCE AT THE COMMON LAW 336–39, 346 (1898).[9]

8. That section provided, in pertinent part:

Whoever, having been released pursuant to this chapter, willfully fails to appear before any court or judicial officer as required, shall, ... if he was released in connection with a charge of misdemeanor, be fined not more than the maximum provided for such misdemeanor or imprisoned for not more than one year, or both....

9. [F]ixing the duty of going forward with proof ... alone, appears to be characteristic and essential work of the presumption.... While it is obvious, then, that a presumption ... accomplishes, for the moment at any rate, the work of reasoning and evidence, ... neither this result, nor the rule which requires it, constitutes, in itself, either evidence or reasoning. This might seem too plain to require mention if it were not for the loose phraseology in which courts some-

times charge the jury, leaving to it in a lump "all the evidence and the presumptions," as if they were capable of being weighed together as one mass of probative matter.... [S]ometimes judges go on to declare that the presumption is in itself so much probative matter, to be weighed as against other probative matter, *i.e.*, is evidence in the proper sense of the word, and make this notion the basis of a decision. Such an error is quite too grave and harmful to be overlooked.... It is one of the commonest of errors to misapprehend the scope and limitations of the ordinary rules and maxims of presumption; and to attribute to them a mistaken quality and force. They are, as we have seen, merely *prima facie* precepts; and they presuppose only certain specific and expressed facts. *The addition of other facts*, if they be such as have evidential bearing, *may make the presumption* inapplicable. All is then turned into an

In my view, the fact that Congress has created an inference that pushes the government over the "verdict of acquittal" hurdle does not mean that Congress has eliminated the requirement that the government prove beyond a reasonable doubt that the defendant was aware of his obligation and deliberately failed to honor it. Congress' preservation of "willfulness" as an essential element of the offense of failure to appear is a sign that the government is at no point relieved of its burden to prove beyond a reasonable doubt awareness of obligation and intentional failure to comply. The government is entitled to an inference of willfulness in order to get its case to the jury and may rely on an instruction on the inference if the defendant fails to go forward with exculpatory evidence. In addition, as in *Raymond, supra,* had the court instructed the jury that it was absolutely free to ignore the inference—and in addition, had properly instructed the jury on wilfulness—we could uphold the inference instruction. Where the defendant has gone forward with exculpatory evidence, however, the burden shifts to the government to demonstrate, based on *all* of the evidence, that the failure to appear was willful. Especially in a case such as this one, where the trial court also instructed the jury that it could infer intent from appellant's acts or omissions to act, that burden is not satisfied by mere proof of notice and failure to appear. On this record, in light of appellant's evidence on willfulness, I cannot conclude that the government's case—consisting solely of no-

tice—constituted proof beyond a reasonable doubt that appellant willfully failed to appear for trial. I respectfully dissent.

ordinary question of evidence, and the two or three general facts presupposed in the rule of presumption take their place with the rest, and operate, with their own natural force, as a part of the total mass of probative matter. [T]he main point to observe is, that *the rule of presumption has vanished.*

J. THAYER, *supra* at 337, 339, 346 (emphasis added).

Or, as rather colorfully put by another jurist, "Presumptions ... may be looked on as the bats of the law, flitting in the twilight but disappearing in the sunshine of actual facts." *Mockowik v. Railroad,* 196 Mo. 550, 571, 94 S.W. 256 (1906) (Lamm, J.).

The clear rule in civil cases is that absent some "exceptionally strong and visible policies," presumptions create burdens of production, not burdens of persuasion. Once the party upon whom the burden rests comes forward with some evidence, the presumption vanishes, and the jury should not be instructed on it. *Davis v. Altmann,* 492 A.2d 884, 886 (D.C.1985); *Green v. District of Columbia Dep't of Employment Services,* 499 A.2d 870, 874 (D.C.1985); *see New York Life Ins. Co. v. Gamer,* 303 U.S. 161, 170–71, 58 S.Ct. 500, 502–03, 82 L.Ed. 726 (1938); *Mobile, J. & K.C. RR. v. Turnipseed,* 219 U.S. 35, 42–43, 31 S.Ct. 136, 137–38, 55 L.Ed. 78 (1910); *Lincoln v. French,* 105 U.S. (15 Otto) 614, 617, 26 L.Ed. 1189 (1881); J. WIGMORE, EVIDENCE § 2491, at 305–06 (Chadbourn rev. 1981). It would be anomalous if, in light of the presumption of innocence in criminal cases, a presumption in such a case were to create a heavier burden on a defendant than upon a party in a civil case.