**Kenneth L. FOSTER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 95–CM–1283.**

District of Columbia Court of Appeals.

Argued May 20, 1997.
Decided July 31, 1997.

Cynthia Goode, Public Defender Service, with whom James Klein, Public Defender Service, and Samia Fam and Gretchen Franklin, Public Defender Service, were on the brief, for appellant.

Rachel Adelman–Pierson, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, STEADMAN and REID, Associate Judges.

REID, Associate Judge.

After a bench trial, appellant Kenneth L. Foster was convicted of willfully failing to appear in court, in violation of D.C.Code

§ 23–1327(a) (1996) (Bail Reform Act ("BRA")).[1] He filed this appeal contending that (1) the trial court erred in applying a negligence standard to determine willfulness under the BRA; and (2) there was insufficient evidence to support his BRA conviction.[2] We remand the case to the trial court for further consideration in light of this opinion.

## FACTUAL SUMMARY

On July 12, 1994, Mr. Foster was given notice to return to court for trial on August 8, 1994, in connection with four pending misdemeanor charges. He not only acknowledged receipt of the notice to return, but conceded that he was fully aware of his obligation to return and the consequences of a failure to do so. However, on August 8, he did not appear in court, and a bench warrant was issued for his arrest. On January 25, 1995, five months after the issuance of the bench warrant, Mr. Foster turned himself in to authorities.

Mr. Foster offered the following explanation for his failure to appear. He stated that, at the time of his BRA violation, he had been employed as a Greyhound bus driver for three years on a pay as you work basis. In addition, he was the sole source of financial support for his wife and six children. He was unable to appear in court on August 8, 1994, because he was "stranded in Montreal in the course of [his Greyhound employment]." On August 6, he accepted an assignment to drive a tour bus group from New York to Montreal. His employer assured him that he could return to New York on August 7, by driving another tour group from Montreal, leaving there about 11 a.m. The return trip would have enabled him to catch a complimentary bus ride from New York to the District of Columbia ("District") in time to appear in court at 9:00 a.m. on August 8. However, he asserts, due to circumstances beyond his control, the August 7 return trip from Montreal was cancelled, thereby leaving him stranded with no other means to return

to New York. He had only $7 in cash because all of his lodging and meals were provided for by Greyhound. On August 8, he called his attorney to advise her of the situation.

Mr. Foster returned to New York late in the evening on August 8, and worked the next day, driving round trip from New York to Baltimore. The following three days, Wednesday through Friday, he did not work, and failed to report to court during those days. Not until January 25, 1995, did he finally report to court on the bench warrant. When asked whether he has ever been "stuck . . . in a location before," he answered affirmatively. When asked how often he has been stranded, Mr. Foster responded, "It doesn't happen on a daily basis but it has happened before. . . ." He also testified that "he had no intention of trying to evade the court."

Mr. Foster claims he delayed turning himself in to the court because he knew from his experience as a former corrections officer that he would be incarcerated for failing to appear. He feared incarceration would place his job in jeopardy. Thus, he waited for a time when he could arrange a leave of absence from Greyhound before turning himself in. He claimed the earliest he could arrange leave was on January 25, 1995, some five months after the bench warrant was issued.

After his bench trial, the trial court stated, *inter alia*,

I convict [Mr. Foster] of the offense of having . . . willfully failed to appear in court.

I find . . . that [the defense has] conceded . . . that the case presented by the Government is sufficient . . . because it permits the inference that, that [Mr. Foster] willfully did not appear as he was directed to do.

Now [the defense has] conceded generally that, . . . [Mr. Foster] was directed to appear on a date certain. He knew it and . . . he did not appear. Rather [he] offer[s] a defense. The defense is along the

---

1. The trial court sentenced Mr. Foster to one hundred days in prison, execution of sentence suspended for all but time already served. He was placed on one year of unsupervised probation and ordered to pay a fine of one hundred dollars and court costs of ten dollars.

2. The case charging Mr. Foster with four misdemeanor counts was later dismissed for want of prosecution.

lines of coercion or duress ... that circumstances were such that it [was] impossible for him to come back to court.

And there is some force to that argument, but on reflection I'm persuaded that ... [Mr. Foster] put himself in a position where it was not possible for him to get back to court. And it seems to me that the testimony established that [fact] in an indifferent sort of way or, ... in a fashion that indicates if not a contempt for his obligation to the Court, as I say reckless indifference to it.

He left both the jurisdiction and the country, and when he did that[,] his testimony was that he knew that from time to time he would get to a destination that could be hundreds of miles away. In this case, Montreal is some 800 miles from Washington and [Mr. Foster] was not be able to get back.

And it seems to me that it's proper to infer that he recognized that ... accepting this assignment to drive to Montreal was incompatible with his obligation to appear in court on Monday, if for no other reason that he knew he might be marooned there and in fact that's what happened.

The trial court decided not to take Mr. Foster's five month delay in contacting authorities into consideration in ruling on the BRA charge.

### ANALYSIS

Mr. Foster argues that (1) the trial court erred in applying a negligence standard to determine willfulness, and (2) the evidence was insufficient to prove he willfully failed to appear in court on August 8, 1994. Because we cannot resolve this matter on the record before us, we remand the case for further consideration in light of this opinion.

■ This court will reverse a conviction on the basis of insufficient evidence "only if, after viewing the evidence in the light most favorable to the government, it can be said that the decision is clearly erroneous." *Cooper v. United States*, 680 A.2d 1370, 1371 (D.C.1996). "Only if there is no evidence upon which a reasonable mind might fairly

conclude guilt beyond a reasonable doubt, can we reverse for insufficiency of the evidence." *Id.* (internal quotation omitted) (citing *Raymond v. United States*, 396 A.2d 975, 978 (D.C.1979)). To convict an individual under the Bail Reform Act, "the trier of fact must find (1) that the defendant was released pending trial or sentencing, (2) that he was required to appear in court on a specified date or at a specified time, (3) that he failed to appear, and (4) that his failure was willful." *Trice v. United States*, 525 A.2d 176, 179 (D.C.1987); *See also* D.C.Code § 23–1327(a).

■ Mr. Foster contends that the government failed to show that his failure to appear was willful. Under the BRA, "[A]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful." D.C.Code § 23–1327(b). Mr. Foster claims that his testimony negated any inference of willfulness. The trial court determined that his own conduct created the circumstances of his failure to appear, that "in a negligent or reckless fashion[,][he] left the jurisdiction knowing from his past experience that he might not be able easily to get back in the jurisdiction." Thus, the trial court was "persuaded that appellant placed himself in a position where it was impossible for him to get back to court."

■ We do not think that a finding of willfulness can rest solely upon Mr. Foster's decision to make the trip to Montreal, as the trial court appeared to conclude. Like any trip, there was a possibility that events would arise which would delay a return, but Mr. Foster's trip was a source of needed income and the testimony does not show that delays were a normal event.[3] On the other hand, the evidence actually before the trial court was certainly sufficient to support a finding of guilt, especially given the statutory presumption. In particular, contrary to the approach taken by the trial court, the five month delay in contacting authorities was decidedly relevant to the issue of willfulness in failing to appear on the scheduled date.[4]

We are thus presented with an evidentiary record sufficient to support a finding of guilt

---

**3.** This assumes that the trial court credited Mr. Foster's testimony in its entirety on this issue.

**4.** The evidence relating to Mr. Foster's efforts to return to the District after the cancellation of the anticipated return trip also is relevant to the

but insufficient on the precise grounds apparently relied upon by the trial court. The central issue here is whether Mr. Foster "willfully" failed to appear in court on August 8, 1994, for trial in his misdemeanor case. In *Trice, supra,* we reiterated that § 23–1327 requires only a showing of general, not specific intent. 525 A.2d at 181 (citing *Patton v. United States,* 326 A.2d 818, 820 (D.C.1974)). Further, we said: "[t]o establish willfulness in a bail jumping case, all that the government must prove is that the defendant's failure to appear in court when requested was knowing, intentional, and deliberate, rather than inadvertent or accidental." *Id.* In *Raymond v. United States,* 396 A.2d 975, 978 (D.C.1979), we said, "[i]f there exist special circumstances that explain the failure to appear, the individual relying on those special circumstances must bear the burden of showing them."

Here, Foster testified as to the special circumstances which he believes precluded his return to the District in time for his status hearing. His August 7 return trip from Montreal was cancelled, and he was "on duty ... status, standby." Prior to leaving for Montreal, he told his employer that he had to be in the District on August 8, for a court appointment. His employer assured him that he would be able to return in time for court. When the August 7 assignment was cancelled, Mr. Foster "notified the dispatcher" who informed him that there was no other transportation by way of Greyhound that could get him back to Washington on the morning of August 8. Foster indicated that "Greyhound is the only [bus] carrier that services Montreal." Mr. Foster called his attorney by using the company phone. He did not contact the train station or any airline company because he had only $7 in cash. He carried no cash for expenses; and only had vouchers for food and lodging. He had no personal credit cards or checks, and no friend or relative who could have wired him money. His wife was unemployed and his six children, all of whom still lived with Mr. Foster and his wife, ranged in ages from six to eighteen. He was able to leave Montreal at 12 noon on August 8, when he received a return assignment, but could not get back in time for his scheduled trial. In short, Mr. Foster testified that he intended to appear in court on August 8, as scheduled, and did not deliberately stay away from court.

The trial judge did not make an explicit credibility determination regarding Mr. Foster's testimony. He recognized that Mr. Foster's defense was: "circumstances were such that it made [it] impossible for him to come back to court." Although the trial court acknowledged that "there is some force to that argument, ...," it ruled against Mr. Foster because he "put himself in a position where it was not possible for him to get back to court." However, it is not clear whether the trial court disbelieved Mr. Foster's testimony. Assuming *arguendo* that the trial court credited the testimony of Mr. Foster as to the events leading up to his making the trip to Montreal, the record does not reveal a factual basis sufficient to support the theory of guilt set forth by the trial court as the underpinning of the conclusion that Mr. Foster's failure to appear was deliberate and intentional, not inadvertent or accidental.

Accordingly, we must remand the case to the trial court for further consideration in light of this opinion. *See Ross v. Hacienda Cooperative, Inc.,* 686 A.2d 186, 191–92 (D.C. 1996); *see also Schymanski v. Conventz,* 674 P.2d 281, 287 (Alaska 1983).[5]

*So ordered.*

---

issue of willfulness, but the record does not clearly reveal the trial court's views with respect to that evidence and its bearing upon the issue of willfulness.

**5.** *Thompson v. United States,* 690 A.2d 479 (D.C. 1997) is not to the contrary. In that case, the trial court itself defined the "crime" of criminal contempt for which the defendant was being tried, namely, the late arrival in court on a particular day, and the evidence was insufficient to convict on the crime as so defined; hence, we reversed outright. Here the crime was defined by the information as the failure to appear in court on a certain day, and the only issue is whether the finder of fact has based its decision on a permissible view of the evidentiary record, which was in itself sufficient.

In this regard, a difference exists between a jury trial and a bench trial. If we were present-

ed here with a general jury guilty verdict, we would affirm without difficulty. In a bench trial, however, the trial court will often reveal the precise basis for the decision. We think that if that particular basis is erroneous but other bases not addressed by the trial court would sustain a conviction, the proper course of action is to remand rather than reverse outright.