# District of Columbia
# Court of Appeals

No. 14-CM-1209

STERLING P. EVANS,



Appellant,

v.                                                                          **CMD-5913-14**

UNITED STATES,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE:  THOMPSON, EASTERLY, and MCLEESE, *Associate Judge*s.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel.  On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment of conviction is reversed, and the case is remanded for the trial court to consider anew, in light of this opinion and all of the evidence presented at trial, whether appellant's failure to appear was willful.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated:  March 17, 2016.

Opinion by Associate Judge Phyllis D. Thompson.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CM-1209

STERLING P. EVANS, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 3/17/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CMD-5913-14)

(Hon. Patricia A. Broderick, Trial Judge)

(Argued September 22, 2015     Decided March 17, 2016)

*Nigel A. Barrella* for appellant.

*Seth M. Gilmore*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman, Elizabeth H. Danello*, and *Laura Crane*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON, EASTERLY, and MCLEESE, *Associate Judges*.

THOMPSON, *Associate Judge*: After a bench trial, appellant Sterling Evans

was convicted of a Bail Reform Act ("BRA") violation for "willfully fail[ing] to

appear"[1] at a scheduled April 2, 2014, status hearing in his marijuana-possession case. Testifying on his own behalf at the BRA trial, appellant told the court that he failed to appear on April 2, 2014, because he thought he was scheduled to appear two days later, i.e., on April 4, 2014. In finding appellant guilty of the charged BRA violation, the trial judge, relying on this court's opinion in *Trice v. United States*, 525 A.2d 176 (D.C. 1987), reasoned that appellant had a "responsibility to check and make sure that he ha[d] the right date."

In this appeal, appellant asks us to resolve this question: Where a defendant in a BRA case defends on the ground that he failed to appear because he did not correctly remember the date of his scheduled court appearance, is a trial judge entitled to infer, *solely* from the fact that the defendant did not double check the scheduled date, that his failure to appear on that date was willful, and thus a violation of the BRA? We answer that question in the negative.[2] Because the trial

---

[1]    D.C. Code § 23-1327 (a) (2012 Repl.) (prescribing penalties for "[w]hoever . . . willfully fails to appear before any court or judicial officer as required").

[2]    The parties more generally dispute the proper interpretation of the term "willfully" under the BRA statute. The government argues that a BRA violation is a general-intent crime and requires only proof that the defendant intended not to be in court on the date at issue, even if the defendant had forgotten about the court date and did not intend to fail to appear as ordered. Conversely, appellant argues

(continued…)

judge in this case relied on just such an inference to find appellant guilty, we reverse the judgment of conviction. However, because we are presented with an evidentiary record that we judge to be "sufficient to support a finding of guilt but insufficient on the precise grounds . . . relied upon by the trial court[,]" *Foster v. United States*, 699 A.2d 1113, 1115-16 (D.C. 1997), and that "does not clearly reveal the trial court's views with respect to [all of the] evidence [that] bear[s] upon the issue of willfulness[,]" *id.* at 1115 n.4, we remand for the trial court to consider anew, in light of all the evidence, whether appellant's failure to appear was willful.

## I.      Background

---

(…continued)

that the government was required to prove that he knew that he was required to appear on the date at issue and intentionally decided not to appear on that date. We do not at this juncture attempt to fully resolve that dispute. Rather, we simply (1) hold that the failure to double-check a court date does not by itself establish willfulness and (2) remand for further proceedings in the trial court, including for the trial court to make additional findings about appellant's mental state and to render a verdict in light of those findings and the applicable law. *Cf. Elonis v. United States*, 135 S. Ct. 2001, 2012-13 (2015) (remanding for further proceedings after holding that negligence does not suffice to support a conviction under the federal threats statute, without deciding whether recklessness would suffice).

Appellant was arrested on August 6, 2013, on a charge of possession of marijuana and was awaiting disposition of his case. On December 2, 2013, he signed a notice to return that required him to appear in court on April 2, 2014, at 9:30 a.m., for a diversion status hearing. When he failed to appear in court on that date, a bench warrant was issued, and he was arrested the same day.

On October 7, 2014, the court (the Honorable Patricia A. Broderick) conducted a bench trial on the charged BRA violation. The government's evidence included the notice to appear signed by appellant, a copy of the bench warrant issued in response to his failure to appear on April 2, and the testimony of the Metropolitan Police Department officer who had arrested him for possession of marijuana. Appellant testified in his own defense. He acknowledged that he signed, was given a copy of, and (he was "quite sure") had heard read to him the notice-to-return obligating him to return to court on April 2. He further testified, however, that he "believe[d]" he "had to come back on [April] 4th." He testified that he did not "know where [he] got April the 4th from." He also told the court that he had been evicted from where he was living, saying, "[M]y finances were exhausted and . . . when I was not even there, [the people] threw out my clothing, my paperwork and I knew that I had to come in April. But, to my knowledge, I thought that it was the 4th." Appellant further explained, "I knew that it was in

April. But, to my knowledge, what I can recollect is because during that time, I had a problem with drinking and stuff of that nature. My memory was lapsing."

On cross-examination, appellant acknowledged that he had a "number of [c]ourt dates," including, on the day of trial in the instant matter, a "probation show" cause matter in courtroom 120 and a "BA" (presumably, "BRA") matter in courtroom 117. He further agreed that "it is important to keep track of . . . [c]ourt dates." He also acknowledged that he did not call Pretrial Services or his attorney to "inquire as to the date in April[,]" and remarked that he "should have" called his attorney. He agreed that there was nothing "keeping [him] from checking to find out when the date was[.]"

In closing argument, the prosecutor argued that appellant's explanations for why he did not appear on April 2 were "not sufficient under the law." The prosecutor emphasized appellant's testimony that he took "no efforts to familiarize himself with the date that he needed to be here" and "did not contact anyone to find out the appropriate date[.]" The prosecutor also cited the absence of evidence that, had appellant not been arrested on the bench warrant on April 2, he would have come to court on April 4. In addition, the prosecutor emphasized the

evidence that appellant was "not a new comer [sic] to the criminal justice system" who could "hide behind the shield of . . . confusion."

Defense counsel emphasized in closing that appellant did not testify that he "just forgot" the date he was to return, but testified instead that he thought the date was on April 4. Counsel stressed that appellant was arrested on the bench warrant "at some point after the bench warrant lodged but before he was supposed to appear in his mind." Willfulness was not proven, counsel argued, because appellant was not given "the opportunity to show up on the date that he thought that he was going to show up[,] which was two days later[,] since he was immediately arrested[.]" Appellant's failure to appear, counsel said, was "the result of a mistake on his part." Counsel acknowledged that appellant had "picked up a number of different cases in very short order and they were all active at the same time."

Judge Broderick found that the facts were "undisputed" and agreed with defense counsel that the case was a "close call." She articulated the issue as, "[W]hen you sign a notice and you know the date and you do not willfully check and make sure that you got the right date, is that willful?" She reasoned that under

*Trice* and *Raymond v. United States*, 396 A.2d 975 (D.C. 1979),[3] it is the defendant's "responsibility to check and make sure that he has the right date." Because the undisputed evidence was that appellant did not check, Judge Broderick found him guilty of willfully failing to appear. This appeal followed.

Appellant argues that the trial court misapplied the willfulness standard of the BRA and misinterpreted *Trice* as imposing a "general 'responsibility to check and make sure that [one] has the right date'" that applies even when a defendant is operating under the belief that he knows the correct date. He contends that his failure to appear as the result of a "mistake of fact" entitled him to reversal of his conviction and entry of a judgment of acquittal. In the alternative, he asks us to remand the case to the trial court to reweigh the evidence and reach a new verdict, "considering the correct legal standard."

## II.     Analysis

---

[3]   In *Raymond*, we held that it was "not unreasonable" for the trial court to rule that Raymond, having received notice "by the continuance slip . . . of the requirement to appear[,]" "could not justifiably rely" on the failure of the Bail Agency to provide additional notices of his appearance date. 396 A.2d at 978.

We begin our analysis by addressing whether, in *Trice*, this court imposed a general duty to double check the date of a scheduled court appearance to avoid BRA liability. Defendant Trice defended his failure to appear on the ground that he was unaware he was to be in court on the day in question, despite having signed a release form advising him of the date he was to appear. 525 A.2d at 179-80. He explained that he "routinely received notices in the mail from the Pretrial Services Agency telling him when and where to appear in court[,]" *id.* at 177, but that "neither his attorney nor anyone from the Pretrial Services Agency called him or mailed him a notice regarding his next scheduled court appearance[,]" *id.* at 178. He further testified that "he could not remember what had happened" to the form that told him when he was due back in court, and he "admitted that he did not contact the Pretrial Services Agency until" after he was due in court to inform that agency of the problems he was having with receiving mail and to find out when he was to return to court. *Id.* This court held that the fact that Trice had not received a secondary notification from the Pretrial Services Agency, as he had on several previous occasions, "was not a legally acceptable excuse for his failure to appear." *Id.* at 180. We said that it was Trice's "responsibility to appear in court when instructed to do so"; that "[i]f he could not remember the date that was on the form, it was up to him to contact the Agency immediately"; and that "[h]is failure to do so cannot excuse his violation of the statute." *Id.*

We agree with appellant that *Trice* did not impose a general duty to "contact the Agency" or the court, or a general duty to double check the scheduled date of a court appearance. *Trice* had such a duty because he did not purport to know what date he was due in court and also had mislaid the form that told him the date (and because, given his problems with receiving mail, he could not rely on receiving a notice from the Pretrial Services Agency). The opinion in *Trice* did not answer the question of whether a defendant who believes he remembers the date he is due back in court must nevertheless double check that date, with the court, or counsel, or the pretrial services agency, lest his failure to appear on the correct date be deemed willful. Thus, in this case, *Trice* did not compel the trial judge, even if she credited appellant's testimony that he misremembered his due date as April 4, to convict him of a BRA violation upon the undisputed evidence that he failed to double check the date.[4]

---

[4] If the trial judge did not credit appellant's testimony about misremembering the date of his scheduled court appearance, she was permitted to infer (in the absence of other credited rebuttal evidence) that his failure to appear was willful. *See* D.C. Code § 23-1327 (b) (providing that "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is wilful"); *Trice*, 525 A.2d at 182 ("[I]f the jury rejects [the defense evidence], the statutory inference remains in the case and provides a sufficient basis for a verdict of guilty."); *Raymond*, 396 A.2d at 976-77 (explaining that § 23-1327 (b) is properly construed as incorporating a permissive rather than a mandatory inference of willfulness from failure to appear, and noting that

(continued…)

As *Trice* recognized, "To establish willfulness in a [BRA] case, . . . the government must prove . . . that the defendant's failure to appear in court when requested was knowing, intentional, and deliberate, rather than inadvertent or accidental." 525 A.2d at 181; *see also Bolan v. United States*, 587 A.2d 458, 460 (D.C. 1991) (per curiam) (same).[5] Without more (and without having been

---

(…continued)
"although the wording of [the statute] may be read to imply that the inference of willfulness is mandatory, . . . in practice, the trier of fact has merely been permitted and not required to infer willfulness").

Appellant contends that Judge Broderick, who remarked that the evidence was "undisputed[,]" did credit his testimony about misremembering the date, even though she did not say so explicitly. The government asserts that Judge Broderick made no such credibility determination, but simply ruled that, either way, appellant had a duty to double check the date he was due back in court. Appellant may have the better of the argument, since Judge Broderick might not have considered the case a "close call" had she discredited appellant's testimony. *But cf. Williams v. United States*, 576 A.2d 1339, 1343 n.7 (D.C. 1990) ("The court's only direct reference to appellant's testimony was this statement: 'The fact that he just overslept does not excuse his actions.' We take the statement to mean the court either believed or assumed the truth of appellant's testimony that he overslept."). In any event, on remand, the trial judge will have an opportunity to state explicitly whether she credits appellant's testimony in whole or part.

[5]    The prosecutor argued to the trial court that appellant had the intent required for a BRA conviction "because he had no intent to be there on the 2nd." We can agree that appellant's failure to appear on April 2 was intentional in that sense, but whether it was deliberate is a different question, "else both [terms] would not be used conjunctively." *United States v. Illinois Cent. R.R.*, 303 U.S. 239, 243 (1938) (internal quotation marks omitted); *see also Jenkins v. United States*, 415 A.2d 545, 547 (D.C. 1980) (holding that where there was testimony that "certain words had been said to appellant which could have given rise to a good faith and reasonable belief that his case had been dismissed[,]" that story, "if

(continued…)

discredited), the evidence that appellant failed to appear because he misremembered the date left open the possibility that his failure to appear was inadvertent or accidental rather than willful.[6]

That said, there *was* more in this case. For example, appellant acknowledged that he "had a problem with drinking" and that his "memory was lapsing." The evidence of appellant's drinking problem, if credited by the court, is evidence that the trial court may (or may not) believe warrants an inference that he voluntarily impaired his ability to comply with the order to return to court on April

---

(…continued)
believed by the jury, would constitute a valid defense to a charge of 'willfully' failing to appear").

We note that the Supreme Court gave a helpful definition of "willfully" in *Illinois Central*: the term "means purposely or obstinately and is designed to describe the attitude of [one], who, having a free will or choice, either intentionally disregards" a legal requirement "or is plainly indifferent to it[]. . . ." 303 U.S. at 243; *see also Patton v. United States*, 326 A.2d 818, 820 (D.C. 1974) (explaining that *Illinois Central*'s discussion of the meaning of "willfully" as used in a regulatory statute "guides our construction of the word 'willfully'" in D.C. Code § 23-1327 (a)).

[6] *Cf. Foster*, 699 A.2d at 1116 ("Assuming *arguendo* that the trial court credited the testimony of Mr. Foster . . . , the record does not reveal a factual basis sufficient to support the theory of guilt set forth by the trial court as the underpinning of the conclusion that Mr. Foster's failure to appear was deliberate and intentional, not inadvertent or accidental.").

2.[7] The evidence of appellant's chronic or recurring memory problems also was evidence that, if credited by the trial judge, might be deemed relevant to the court's assessment of whether appellant's failure to appear was willful.[8] As another example, appellant testified that he "had so much stuff going on" while his underlying marijuana-possession case was pending, including financial difficulties and housing challenges — circumstances that the trial court, if it credits appellant's

---

[7] *Cf. In re Warner*, 905 A.2d 233, 239 (D.C. 2006) (holding, in case involving a conviction for criminal contempt for failure to comply with a court order to pay child support, that willfulness could be shown by "voluntary impairment of the ability to comply with the court order"); *Cooper v. United States*, 680 A.2d 1370, 1372 (D.C. 1996) (per curiam) (holding that the trial court did not err in rejecting defendant's argument that "her drug use supported her defense of mistake[,]" i.e., that her failure to appear could not be deemed willful because her drug use "caused her to be confused about her obligation to return to court"); 18 U.S.C. § 3146 (c) (federal bail-jumping statute providing in pertinent part that "[i]t is an affirmative defense to a prosecution under this section that uncontrollable circumstances prevented the person from appearing . . ., and that the person *did not contribute to the creation of such circumstances* in reckless disregard of the requirement to appear") (emphasis added).

[8] *Cf. Foster*, 699 A.2d at 1115. In *Foster*, this court held that a finding of willfulness could not rest solely on a decision by Foster, who was employed as a bus driver, to drive the employer's bus to Montreal two days before his scheduled court date, because even though "there was a possibility that events would arise which would delay a return, [the] trip was a source of needed income[.]" *Id.* We implied, however, that a finding of willfulness might be warranted if the testimony had shown that "delays were a normal event." *Id.* If the trial judge construes appellant's testimony about memory lapses to mean that they were a "normal event" for him, then, upon crediting that testimony, the court might infer, from appellant's failure to verify what he remembered, that he willfully disregarded the order to return to court on April 2. *See Smith v. United States*, 583 A.2d 975, 979 (D.C. 1990) ("[A] defendant undoubtedly has an obligation to act diligently with respect to returning as required for a further court proceeding[.]").

testimony, may also deem relevant on the issue of willfulness. We note in addition that the trial judge did not indicate whether she agreed with defense counsel that the fact that April 4 had not yet passed by the time of appellant's arrest on the bench warrant — April 4 being the date when appellant claimed he thought he was scheduled to appear — weighed against an inference of willfulness.

The following observation that we made in *Williams*, a criminal-contempt case, is equally applicable here: "In order to find appellant's [failure to appear on April 2] willful beyond a reasonable doubt, . . . the court should have either discredited appellant's testimony explicitly or credited some or all of appellant's testimony while pointing to specific acts or omissions justifying a finding of willfulness[.]" 576 A.2d at 1344. Because the trial court did not do that, we conclude that a remand is in order.

### III.  Conclusion

For the foregoing reasons, we reverse the judgment of conviction and remand for the trial court to consider anew, in light of this opinion and all of the evidence presented at trial, whether appellant's failure to appear was willful.

*So ordered.*