*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CM-589

GEORGE LANIYAN, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-1152-18)

(Hon. Frederick H. Weisberg, Trial Judge)

(Submitted November 26, 2019                    Decided   May 14, 2020)

*Omar M. Bississo* for appellant.

*Dan Honold*, Assistant United States Attorney, with whom *Jessie K. Liu*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, Assistant United States Attorney, were on the brief, for appellee.

Opinion for the court by *Associate Judge* GLICKMAN.

Dissenting opinion by *Associate Judge* THOMPSON at page 15.

Before GLICKMAN and THOMPSON, *Associate Judges*, and FERREN, *Senior Judge*.

GLICKMAN, *Associate Judge*: George Laniyan appeals from his conviction of a misdemeanor violation of the Bail Reform Act,[1] an offense also known as bail jumping, arguing there was insufficient evidence to prove that his failure to appear was willful. We disagree. But because we do not agree with "the precise grounds . . . relied upon by the trial court[,]" we find it necessary to remand the record and retain jurisdiction for the trial court to render additional findings and conclusions relating to its rejection of appellant's defense that his failure to appear was inadvertent, not willful.[2]

**I.**

Appellant was arrested on December 15, 2017, for second-degree theft. He was released that same day and advised to return to court on January 17, 2018. But he did not return on that date, and Metropolitan Police executed a bench warrant for his failure to appear, after they came into contact with him in the Georgetown area on January 22 for an unrelated reason. The only contested issue at trial was whether appellant's failure to appear in court on January 17 was willful.

---

[1] D.C. Code § 23-1327(a) (2019 Supp.).

[2] *Evans v. United States*, 133 A.3d 988, 990 (D.C. 2016) (quoting *Foster v. United States*, 699 A.2d 1113, 1116 (D.C. 1997)).

Testifying at trial, appellant said he had been unemployed since 2006 and homeless since 2009, and he described how the circumstances of his homelessness contributed to his failure to appear in court on January 17. Appellant claimed not to "remember being caught" for second-degree theft on December 15, 2017, but that he did "remember the[] . . . act." He claimed, too, that he did not recall having to be in court on January 17, 2018, prior to the execution of the bench warrant five days later. Around that time, appellant explained, he was traveling between the District and Virginia, where he previously had lived, in search of work. He described his homelessness as "not comfortable." He did not "have [the] chance," he explained, "to think like somebody [who] ha[d] a roof overhead." He experienced "stressful moments where" he "had to think more about protecting [his] skin," to avoid "deal[ing] with violent offenders, i.e., hoodlums, drug addicts, drunkards, [and] all kinds of elements of the streets." Protecting himself on the streets "t[ook] a bit of effort," so he spent "quite a bit of [time] thinking more about [his] safety." To corroborate that testimony, appellant introduced body-camera footage of his arrest on January 22, which, his counsel argued, showed appellant was cooperative with the police and genuinely surprised by his arrest.

On cross-examination, appellant admitted to having been convicted of a number of offenses – for petty larceny, unlawful entry, trespass, and even failure to

appear in court. He agreed that, "when [a] case starts against you, you will have to come to court again, after that first day in court." And in tension with his testimony on direct, he admitted to knowing he had to return to court after his December 15, 2017 arrest and release. Moreover, appellant admitted, he "kn[ew] how to show up somewhere after [he had] been told to go there," from his experience attending classes for school, attending appointments with the Department of Motor Vehicles and the doctor, and meeting the curfew requirements of his former homeless shelter.

After closing arguments, the trial judge made three factual findings. The first was that appellant received notice of the January 17, 2018 court date. The second was that appellant failed to appear in court that day. The third was to infer, based on the first two findings of fact, that appellant's failure to appear was willful, an inference expressly allowed under D.C. Code § 23-1327(b).

It appears that the trial judge relied only on that statutory inference to find appellant's failure to appear willful, even though the judge credited appellant's testimony. "[I]t cannot be the case," the judge said, "that somebody who is in difficult circumstances and disorganized and doesn't keep track of court dates can simply take a piece of paper telling them when they need to be back in court and ignore it. Or lose track of it. Or fail to pay attention to it." A contrary result "would

give virtually half the defendants [who] appear on [the] calendar every day of the week a perfect defense if they chose not to appear," because "many of them are in the circumstances described by [appellant] in his testimony." "The law does not require any more than the fact that [a defendant] received proper notice of the date and place to appear, and then willfully thereafter failed to appear by not coming." A defendant who forgets to attend court is "just as clear" of a case as a person who "[does not] feel like coming." "[I]t's [the defendant's] duty to remember [his] court date and to appear as required once [he has] received notice." "[E]ven if those circumstances did play a role in his failure to appear," the judge concluded, "they do not, in my judgment, overcome the inference of willfulness that[ is] created simply by his failure to appear after adequate notice."

The judge accordingly found appellant guilty of failing to appear in court on January 17, 2018. Appellant filed a timely appeal.

## II.

The crime of bail jumping has four elements: "(1) that the defendant was released pending trial or sentencing, (2) that he was required to appear in court on a specified date or at a specified time, (3) that he failed to appear, and (4) that his

failure was willful."[3] Appellant did not contest the government's proof of the first three elements of the offense at trial. Nor does he do so on appeal. He argues, however, that the government presented insufficient evidence to prove that his failure to appear was willful. He claims, more specifically, that he presented sufficient evidence at trial to negate, as a matter of law, the statutory inference of willfulness relied upon by the trial court. We disagree.

"To establish willfulness in a bail jumping case," the government need not prove that the defendant had an evil or corrupt intent, but rather "that the defendant's failure to appear in court when requested was knowing, intentional, and deliberate, rather than inadvertent or accidental."[4] D.C. Code § 23-1327(b) instructs that "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is wilful [*sic*]." In the face of a Fifth Amendment due process challenge, we interpreted that statutory provision as permitting, but not requiring, the fact finder to infer that a defendant's failure to appear was willful in

---

[3] *Trice v. United States*, 525 A.2d 176, 179 (D.C. 1987) (quoting *Raymond v. United States*, 396 A.2d 975, 976 (D.C. 1979)).

[4] *Id.* at 181.

the situations described by § 23-1327(b).[5]  After the government makes a showing sufficient to support the inference, "the burden of production of, or going forward with, rebuttal evidence rests with the defendant."[6]  In presenting rebuttal evidence, the defendant is entitled to show there were "special circumstances that explain the failure to appear."[7]

We disagree with appellant that he presented sufficient evidence to negate the inference of willfulness as a matter of law.  Although, as we discuss below, we believe the trial judge did not give sufficient consideration to appellant's personal circumstances in making his finding of willfulness,[8] nothing compelled the judge to

---

[5]  *Raymond*, 396 A.2d at 977.

[6]  *Id.*

[7]  *Id.* at 978.

[8]  Past decisions of this court confirm the relevance of personal circumstances such as those appellant described in determining whether a failure to appear in court was willful. *See Evans*, 133 A.3d at 993-94 ("As another example, appellant testified that he 'had so much stuff going on' while his underlying marijuana-possession case was pending, including financial difficulties and housing challenges—circumstances that the trial court, if it credits appellant's testimony, may also deem relevant on the issue of willfulness."); *Foster*, 699 A.2d at 1115 ("We do not think that a finding of willfulness can rest solely upon Mr. Foster's decision to make the trip to Montreal, as the trial court appeared to conclude.  Like any trip, there was a possibility that events would arise which would delay a return, but Mr. Foster's trip was a source of needed income and the testimony does not show that delays were a normal event.").

credit all of appellant's testimony. And there was other evidence in the record that undermined appellant's claim of inadvertence and could have supported a finding of willfulness. First, appellant's criminal record, which had at least one conviction for failure to appear, indicates, as we have explained before, that he "is not a newcomer to the criminal justice system and cannot now hide behind a shield of naivety and confusion."[9] Second, appellant agreed on cross-examination that he knew he had to return to court but simply forgot (as opposed to misremembered) the date. If a defendant "d[oes] not purport to know what date he [is] due in court," we have said, and realizes that he does not know, he has a "duty" to contact the court or pretrial services to get the correct date.[10] Third, appellant admitted attending to some of his other obligations and knowing how to be somewhere when necessary. All things considered, we think a trier of fact reasonably could find that appellant consciously disregarded his obligation to appear in court.

But although the evidence is sufficient to support appellant's conviction, we deem it sufficient based only on findings of fact that the trial judge could have made

---

[9] *Trice*, 525 A.2d at 180 (quoting *Raymond*, 396 A.2d at 978).

[10] *Evans*, 133 A.3d at 992. Although we have framed this factor as one of "duty," we see no reason why other circumstances in a particular case cannot overcome a defendant's failure to fulfill this "duty."

but did not. Our concern is that the judge inadequately considered appellant's excuses and relied only on an inference of willfulness from the bare failure to appear as required. We therefore believe that a remand of the record is appropriate for the judge more precisely to consider appellant's defense and make more specific findings and conclusions regarding the central issue in this case. Our cases hold that where, as here, a defendant presents special circumstances explaining his failure to appear as inadvertent, the judge (in a bench trial) must either discredit the defendant's evidence or credit some or all of it while pointing to other evidence overcoming it.[11] In other words, if a defendant puts forward a colorable defense to a finding of willfulness, and if the judge credits that defense, then the judge must discuss in sufficient detail the proffered reasons for failing to appear and what other evidence overcomes those reasons, in order to find the defendant's failure to appear willful. In those situations, the judge cannot simply rely on the statutory inference alone.

---

[11] *Id.* at 994.

In *Foster v. United States*[12] and *Evans v. United States*,[13] we remanded for more specific findings regarding the appellants' defenses and the impact of their personal and financial circumstances. In *Foster*, Mr. Foster accepted an assignment to drive a Greyhound bus from New York to Montreal two days prior to his scheduled court date, thereafter missing court due to inclement weather preventing his planned return trip.[14] He testified at trial that he was the sole source of income for his wife and six children, and he claimed to have had "no intention of trying to evade the court."[15] While he acknowledged that he had gotten "stuck" in a destination before, he stated that getting "stuck" was not a frequent occurrence.[16] Mr. Foster did not turn himself in until about five months later, because he "feared incarceration would place his job in jeopardy," and he wanted to "arrange a leave of absence from Greyhound before turning himself in."[17] The trial court, in finding that Mr. Foster's failure to appear was willful, was "persuaded" that Mr. Foster "put

---

[12] 699 A.2d 1113.

[13] 133 A.3d 988.

[14] 699 A.2d at 1114.

[15] *Id.*

[16] *Id.*

[17] *Id.*

himself in a position where it was not possible for him to get back to court," and that this demonstrated he had a "reckless indifference to" his obligation to return.[18]

We reversed the conviction and remanded, explaining that "a finding of willfulness" could not "rest solely upon Mr. Foster's decision to make the trip to Montreal."[19] "Like any trip," we explained, "there was a possibility that events would arise which would delay a return, but Mr. Foster's trip was a source of needed income and the testimony does not show that delays were a normal event."[20] A remand was appropriate because other record evidence in addition to the statutory inference could have supported the trial court's finding that Mr. Foster's failure to appear was willful, including adverse credibility determinations the court could have made and the fact that Mr. Foster waited five months to turn himself in.[21] "We [we]re thus presented with an evidentiary record sufficient to support a finding of guilt but insufficient on the precise grounds . . . relied upon by the trial court."[22] And

---

[18] *Id.* at 1115.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 1115-16.

in a bench trial for bail jumping, "if [the] particular basis [for conviction] is erroneous but other bases not addressed by the trial court would sustain a conviction, the proper course of action is to remand rather than reverse outright."[23]

In *Evans*,[24] Mr. Evans misremembered his court date and sought to explain his lapse of memory at trial by testifying that he was wrapped up in dealing with an eviction, financial struggles, marijuana-possession charges, a drinking problem, and chronic memory loss.[25] In finding that Mr. Evans's failure to appear was willful, the trial court read our cases as imposing a duty on defendants to contact the court or pretrial services whenever they misremember their court date.[26] The court, in effect, "relied on just" § 23-1327(b)'s "inference [of willfulness] to find [Mr. Evans] guilty."[27]

---

[23] *Id.* at 1116 n.5.

[24] 133 A.3d 988.

[25] *Id.* at 990.

[26] *Id.* at 991.

[27] *Id.* at 989-90.

We reversed the conviction and remanded, holding that defendants are under no such duty when they misremember (as opposed to when they realize they have forgotten) their court date.[28] Although there was evidence in the record that supported a finding of willfulness – such as Mr. Evans's voluntary intoxication and untreated chronic memory loss – there was other evidence in the record that "left open the possibility that [Mr. Evans's] failure to appear was inadvertent or accidental rather than willful" – such as his financial and housing struggles and the fact that the court date he misremembered had not passed by the time of his arrest.[29] The record, we said, did "not clearly reveal the trial court's views with respect to [all of the] evidence [that] bear[s] upon the issue of willfulness[,]"[30] and the court, we explained, "should have either discredited [Mr. Evans's] testimony explicitly or credited some or all of [it] while pointing to specific acts or omissions justifying a finding of willfulness."[31]

---

[28] *Id.* at 991-92.

[29] *Id.* at 993.

[30] *Id.* at 990 (quoting *Foster*, 699 A.2d at 1115 n.4).

[31] *Id.* at 993 (quoting *Williams v. United States*, 576 A.2d 1339, 1344 (D.C. 1990)).

Here, we are confronted with a record that we consider similar to those in *Foster* and *Evans*. On the one hand, appellant presented evidence of special circumstances explaining his failure to appear as inadvertent. Although appellant claimed that the press of his unfortunate circumstances caused him not to remember his obligation to return to court rather than (as in *Evans*) to misremember the date he was due to return, the latter is not the only basis for finding inadvertence. On the other hand, the trial judge could have discredited appellant's testimony or found it to be overcome by evidence that his failure to appear was willful. The issue, however, is that it appears the trial judge did not adequately address appellant's defense and relied only on the statutory inference.[32] "[M]indful that we are a court

---

[32] The government's argument, that "[t]he trial court . . . correctly applied *Evans* when it reasoned that appellant, despite his 'difficult circumstances,' could not ignore his notice to return and 'then fail to appear in court as required,'" is based on a misreading of our cases. The trial judge, under *Evans* and *Foster*, must determine more than that the defendant was obligated to appear in court in spite of his difficulties; the judge must determine whether those difficulties in fact rendered the nonappearance inadvertent rather than willful. In this case, the judge does not appear to have grappled explicitly with that question. The government also argues that a remand is inappropriate because "the reasoning in *Evans* is limited to situations where a defendant's testimony, if credited, would change the outcome of the case." Fair enough, but if a defendant, as appellant did here, testifies that he did not remember he had an ongoing criminal matter in Superior Court, and if the trier of fact credits that testimony, it is difficult to say that the defendant's "failure to appear in court when requested was knowing, intentional, and deliberate, rather than inadvertent or accidental," *Trice*, 525 A.2d at 181, unless the trier identifies other evidence in the record that overcomes that testimony.

of review, not of first view,"[33] the absence of trial court findings and conclusions directed to appellant's defense warrants a remand, so we will retain jurisdiction over the appeal and remand the record to the trial court pursuant to D.C. Code § 17-306 (2012 Repl.).[34] This remand will "give the trial judge the opportunity to complete or clarify the record so that this court will have an adequate basis for review of the trial court's rulings."[35] On remand, the judge should rule on appellant's credibility and whether appellant's defense, considered in light of all the evidence, raised a reasonable doubt as to whether his failure to appear was willful. After the judge issues new findings in accordance with this opinion, the record thus supplemented shall be returned to this court for decision.[36]

*So ordered.*

---

[33] *Newell-Brinkley v. Walton*, 84 A.3d 53, 61 (D.C. 2014) (citations and alterations omitted).

[34] *See Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996).

[35] *Id.*

[36] In a record remand such as this, the trial court does not have the authority to amend its judgment of conviction. If, upon reweighing the evidence for the purpose of making new findings, the judge indicates an inclination to acquit appellant, the proper course is for one of the parties to move this court for a remand. *See id.*

THOMPSON, *Associate Judge*, dissenting: Notwithstanding my sincere sympathy for this homeless appellant and my distaste for upholding a conviction that adds further to his troubles, I cannot agree that the trial court's findings were wanting in any respect. Though the court did not state explicitly that it credited appellant's testimony, it clearly did. Otherwise, the court would not have remarked that appellant's situation was sympathetic, that he lost his own place to live in 2009, that he lost the "anchor" of living with his uncle, that he was in difficult circumstances," and that he was "disorganized" and "living on the street." The court also understood that the inference that a defendant who fails to return to court after receiving notice to do so is a permissible rather than mandatory inference; the court referred to the inference as one that "can be drawn."

Appellant testified that he did not remember that he was to return to court on January 17, 2018, but acknowledged that he knew that his case was continuing and that he "w[as] going to have to be in court again for th[e] [trespassing] charge" he faced. Further, he testified that he had "stressful moments" and "quite a bit of time" where he had to think about his safety and protecting his skin in the streets, but he did not say that he had no time to think about anything else.

The court reasoned that a person in appellant's circumstances who does not keep track of court dates may not simply ignore or fail to keep track of the paper telling him when to come back to court, because there is a duty to remember. Finally, the court said that even if appellant's circumstances played a role in his failure to appear, they did not overcome the inference of willfulness the court drew. I do not understand what more the trial court was required to do, so I respectfully dissent from the remand order. I would affirm the conviction.